PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAY(Q)R, LLC, | ) | |
| | ) | CASE NO. 5:15cv1038 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| GEORGE SIBBLE, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 20] |

Pending before the Court is a Rule 12 Motion to Dismiss and Motion for a More Definite

Statement filed by Defendants George Sibble, Positronics Technologies, Inc., Omnivore

Technologies, Inc., Menupad, Inc., Michael Wior, Michael Taczak, Chris Sullivan, and Victor

Lafita.  ECF No. 20.  The Court has been advised, having reviewed the record, including the

parties' briefs and the applicable law.  For the reasons that follow, the Court grants in part and

denies in part Defendants' motion to dismiss, and denies the motion for a more definite

statement.

## I.  Factual and Procedural Background

Plaintiff Pay(q)r ("Payr") was founded in January 2013 for the purposes of developing

two software systems for use in the restaurant and hospitality industry: the Payr App and the POS

Connectivity System.  ECF No. 1 ¶ 14.  The Payr App, a payment software application, would

allow customers to pay for food with their mobile devices. *Id.*  The POS Connectivity System, a

cloud-based communication and integration software system, would connect customer software

(5:15cv1038)

systems (such as payment applications like the Payr App) to the cloud systems used by restaurants at the point of sale.  ECF No. 1 ¶ 14.

Payr approached Defendant George Sibble, an experienced software engineer, about working with Payr to develop code for the POS Connectivity System.  Id. ¶ 16.  Sibble proposed that he could develop a licensable version of the POS Connectivity System for Payr within two to three months.  Id. ¶ 17.  On or around September 30, 2013, Payr and Sibble entered into a Software Development Service Agreement ("SDSA"), which required Payr to pay Sibble for 300 hours of coding to create the POS Connectivity System, with the possibility of Sibble acquiring equity in the company at a later date.  Id. ¶ 18.  Payr and Sibble also discussed forming another entity—POSitronics, Inc.—that Payr's members and Sibble would co-own, and between which Payr and Sibble would divide Payr's software: Payr would own the Payr App, while POSitronics would own the POS Connectivity System that Sibble was under contract with Payr to design.  Id. ¶¶ 19–21.

At some point in October or November 2013, Sibble approached another company, Defendant MenuPad, to encourage the company to invest in Payr and Sibble's idea for POSitronics.  Id. ¶ 22.  Sibble had numerous conversations with Defendants Michael Wior (MenuPad's Chief Technology Officer) and Chris Sullivan (MenuPad's Chairman).  Id.  Payr contends that Sibble excluded Payr's members from conversations with MenuPad, despite their desire to be included.  Id.  Eventually, Payr and MenuPad entered into a Non-Disclosure Agreement ("NDA") to keep confidential the terms of the POSitronics business plan.  Id. ¶ 23. After reviewing the business plan, MenuPad agreed to provide Payr with $20,000, and discussed

2

(5:15cv1038)

investing an additional $1.5 million in POSitronics.  ECF No. 1 ¶ 24.  Instead of transferring the

$20,000 to Payr, however, MenuPad gave the funds to Sibble.  *Id.* ¶ 25.

The relationship between Payr and Sibble began to sour.  When Payr asked Sibble to

demonstrate his progress on the POS Connectivity System coding, Sibble told the company that

it was taking longer than expected, that he nearly exhausted the 300 hours that Pay had

contracted for his services, and that he would not perform any more work until Payr and Sibble

agreed to new payment terms.  *Id.* ¶ 26.  Payr alleges that Sibble misrepresented how much work

that he had done on the code, and that Sibble violated the SDSA by receiving assistance from

another software engineer, Defendant Michael Taczak, without Payr's permission.  *Id.* ¶ 27.

Sibble informed Payr that he no longer wished to work with Payr in December 2013.  *Id.*

¶ 28.  Sibble told Payr that he was pursuing a new business opportunity, but would not provide

Payr with any details of the opportunity.  *Id.*  Payr alleges that Sibble nonetheless promised to

finish the coding for Payr, but he has failed to do so.  *Id.*  At around the same time that Sibble

and Payr's relationship deteriorated, Wior informed Payr that MenuPad no longer wished to

invest in POSitronics.  *Id.* ¶ 29.  Payr alleges that Sibble and MenuPad had been working behind

Payr's back to form their own company based on the business model for POSitronics.  *Id.* ¶ 31.

On October 14, 2014, Payr alleges that it received a cold solicitation email from an entity

named "Positronics" that wanted to sell Payr "a simple but powerful cloud-based API

[application programming interface] that enables legacy restaurant POS systems for cloud facing

mobile payments, ordering and data consumption."  *Id.* ¶ 35.  Payr contends that "Positronics" is

a company that was formed by Sibble and many of MenuPad's officers that operated a virtually

(5:15cv1038)

identical business as the one that Payr and Sibble had conceived of in the fall of 2013, and that the Positronics' owners later formed Omnivore, an entity to which Positronics transferred substantially all of its assets.  ECF No. 1 ¶¶ 31–32, 35.  According to Payr, this demonstrated that Sibble and MenuPad have misappropriated its business model, in violation of the confidentiality provisions of Sibble's SDSA and MenuPad's NDA.

Payr first filed lawsuit on November 24, 2014.  *See Pay(q)r, LLC v. Positronics Technologies, Inc. et al.* (14-2588).  Payr voluntarily dismissed that case on May 18, 2015, and filed the instant action on May 22, 2015.  ECF No. 1.  Payr has sued Sibble, Positronics Technologies, Omnivore Technologies, MenuPad, Inc., Wior, Taczak, Sullivan, and Victor Lafita, and has asserted claims for misappropriation of trade secrets, breach of the Sibble SDSA, breach of the MenuPad NDA, copyright infringement, accounting, and indemnification.

Defendants filed a motion to dismiss and for a more definite statement.  ECF No. 20.  All Defendants except Sibble (Positronics, Omnivore, MenuPad, Wior, Taczak, Sullivan, and Lafita) have moved to dismiss based on a lack of personal jurisdiction.  Defendants also move to dismiss, for failure to state a claim, Payr's claims for misappropriation of trade secrets, copyright infringement, accounting, and indemnification.  In the alternative, Defendants also moved for a more definite statement on Payr's misappropriation of trade secrets claim.  Payr opposed Defendants' motion (ECF No. 31); Defendants replied.  ECF No. 37.  The matter is ripe for review.

4

(5:15cv1038)

## II.  Legal Standard

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff has the burden of establishing the Court's personal jurisdiction over each defendant.  *Beydoun v. Wataniya Restaurants Holding, O.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  When the Court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff "need only make a *prima facie* showing of jurisdiction." *Beydoun*, 768 F.3d at 504 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).  Plaintiff must establish, with reasonable particularity, sufficient contacts between the defendant and the forum state to support jurisdiction.  *Id.*  In reviewing the motion to dismiss, the Court will construe the facts in the light most favorable to the non-moving party and disregard those facts offered by the movant that conflict with those offered by the non-movant.  *Id.* (citing *Neogen Corp.*, 282 F.3d at 887).  Dismissal is proper only if all the specific facts alleged by Plaintiff collectively fail to state a *prima facie* case for jurisdiction.  *CompuServe*, 89 F.3d at 1262.

### B.  Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  It also must "state a claim that is plausible on its face." *Id.* at 570.  Upon reviewing a motion to dismiss, the Court shall take the pleadings as true and construe them "liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).  Claims set forth in a complaint must be plausible, rather than conceivable.  *Twombly*, 550

5

(5:15cv1038)

U.S. at 570.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. Pro.

8(a)(2)).  The factual allegations in the complaint "must contain something more . . . than . . .

merely creat[ing] a suspicion of a legally cognizable right." *Twombly*, 550 U.S. at 555–56

(quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235–236 (3d ed.

2004)).  In addition to reviewing the claims set forth in the complaint, a court may also consider

exhibits, public records, and items appearing in the record of the case as long as the items are

referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l*

*Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.  Analysis

#### A.  Personal Jurisdiction

All Defendants except Sibble (Positronics, Omnivore, MenuPad, Wior, Taczak, Sullivan,

and Lafita) have moved to dismiss based on a lack of personal jurisdiction.  ECF No. 20-1 at

PageID# 146–53.  Defendants argue that Payr has failed to demonstrate both that Ohio's long

arm statute confers jurisdiction, and that the exercise of jurisdiction comports with due process.

*Id.*

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless

courts of the forum state would be authorized to do so by state law—and any such exercise of

jurisdiction must be compatible with the due process requirements of the United States

Constitution." *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)

6

(5:15cv1038)

(citation omitted).  Under Ohio law, personal jurisdiction exists over a non-resident defendant

when Ohio's long arm-statute confers jurisdiction and the exercise of jurisdiction over the

non-resident defendant comports with the Federal Due Process Clause.  *Kauffman Racing Equip.,*

*L.L.C. v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010).

       Ohio's long-arm statute establishes nine statutory bases for the exercise of personal

jurisdiction over a non-resident defendant.  R.C. § 2307.382(A).  Ohio's long-arm statute further

limits personal jurisdiction over non-resident defendants to causes of action "arising from" the

basis for personal jurisdiction.  R.C. § 2307.382(C).  The "arising from" requirement under the

long-arm statute has been interpreted as requiring a "proximate cause" relationship between the

plaintiff's injury and the defendant's conduct in Ohio.  *Brunner v. Hampson*, 441 F.3d 457, 466

(6th Cir. 2006) (concluding the Ohio long-arm statute requires the tighter fit of proximate

causation and not the "but-for" approach used under the Due Process Clause).

       Before an Ohio court may exercise personal jurisdiction under the long-arm statute, the

court must also ensure that the exercise of jurisdiction over the defendant comports with the

requirements of the Due Process Clause: the defendant must "have certain minimum contacts

with [the forum state] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice."  *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d

1087, 1089 (6th Cir. 1989) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945)) (internal quotation marks omitted).  Specific personal jurisdiction allows a state to

"exercise[] personal jurisdiction over a defendant in a suit arising out of or related to the

defendant's contacts with the forum."  *Id.* at 1089 (quoting *Helicopteros Nacionales de*

7

(5:15cv1038)

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). The Sixth Circuit has set forth the

following three-part test for analyzing whether specific jurisdiction may be exercised consistent

with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in
> the forum state or causing a consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there. Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of jurisdiction over
> the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1. Long Arm Statute

Payr primarily asserts that the Court may exercise personal jurisdiction over Defendants

pursuant to R.C. § 2307.382(A)(1) because Defendants have transacted business in Ohio. ECF

No. 31 at PageID# 415–16. The Ohio Supreme Court defines "transacting any business"

broadly: 'The term 'transact' as utilized in the phrase '[t]ransacting any business' encompasses

'to carry on business' and 'to have dealings,' and is 'broader . . . than the word 'contract.''

*Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994) (quoting *Kentucky Oaks Mall Co. v.

Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990)). Given the "bare wording" of

the statute, courts must make a case-by-case determination of whether a non-resident defendant

has transacted business in Ohio. *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology &

Oncology, LLC*, 2011 WL 711568, at *4 (N.D. Ohio Feb. 22, 2011). "The mere existence of a

contract is insufficient to support jurisdiction." *Burnshire Development LLC v. Cliffs Reduced

Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006). Moreover, the plaintiff needs to establish

that there is a substantial connection between the defendant and the forum state. *U.S. Sprint*

8

(5:15cv1038)

*Commc'ns Co. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994). Courts have

identified two factors that guide the analysis of whether a non-resident defendant has transacted

business within Ohio. As another unit of the instant Court observed:

> The first factor is whether the out-of-state defendant initiated the dealing. If it
> were the defendant who reached out to the forum state to create a business
> relationship, the defendant has transacted business within the forum state. The
> question of who initiates the contact, however, is but one factor to be considered
> and the determination is not always dependent upon who initiates the contact.
> With regard to reaching out, as a general rule, the use of interstate lines of
> communication such as mail and telephones does not automatically subject a
> defendant to the jurisdiction of the courts in the forum state.
>
> The second factor is whether the parties conducted their negotiations or
> discussions in the forum state, or with terms affecting the forum state. If the
> parties negotiated in Ohio with provisions affecting Ohio, the non-resident
> transacted business in Ohio. However, merely directing communications to an
> Ohio resident for the purpose of negotiating an agreement, without more, is
> insufficient to constitute transacting business. Rather, there must additionally be
> some continuing obligation that connects the non-resident defendant to the state or
> some terms of the agreement that affect the state.

*Hitachi*, 2011 WL 711568 at *5 (citations, internal quotation marks omitted).

In this case, Payr advances only two specific facts that it believes subject Defendants to

personal jurisdiction under R.C. § 2307.382(A)(1). *See CompuServe*, 89 F.3d at 1262 (requiring

dismissal when all specific facts alleged by a plaintiff collectively fail to establish a *prima facie*

case for jurisdiction). Neither is sufficient.

Payr alleges that it approached Defendants MenuPad, Wior, Taczak, Sullivan, and Lafita

about an ultimately unsuccessful business arrangement. ECF No. 1 ¶¶ 22, 29. Payr alleges that

discussions between Sibble (on behalf of Payr) and Sullivan and Wior resulted in the MenuPad

Non- Disclosure Agreement and a $20,000 investment given from MenuPad to Sibble in

9

(5:15cv1038)

exchange for equity in Payr.  ECF No. 1 ¶¶ 23–25.  Payr, however, admits that it contacted

MenuPad, not the other way around.  While Payr alleges that Wior and Sullivan exchanged

emails with Payr, this interstate communication does not automatically subject these defendants

to personal jurisdiction in Ohio.  *Hitachi*, 2011 WL 711568 at *5 (citing *Benjamin v. KPMG*

*Barbados*, 2005 WL 995589 (Ohio Ct. App. Apr. 28, 2005)).  Moreover, the MenuPad NDA

specified that the state of Florida had the exclusive jurisdiction over any action to enforce the

agreement's terms.  ECF No. 1-2 at PageID# 38.  The agreement does not discuss the state of

Ohio, and there is no indication in this record that any of the discussions between Payr and

Defendants were held in Ohio.  Collectively, these facts do not suggest a substantial connection

with Ohio.  *U.S. Sprint Commc'ns Co. P'ship*, 624 N.E.2d  at 1052.

Payr separately alleges that Defendant Positronics and/or Omnivore sent Payr a cold

solicitation email on October 14, 2014.  ECF No. 1 ¶ 35.  According to Payr, this email described

a business model that was "virtually identical" to the proposal that Sibble had written for Payr.

*Id.*  Again, however, this isolated communication does not subject the companies to jurisdiction

in Ohio.  This one-time email does not suggest that Positronics and/or Omnivore had a

continuing obligation that connected the two to the state.  *Shaker Const. Grp., LLC v. Schilling*,

2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008) (citing *Kentucky Oaks Mall Co.*, 559 N.E.2d

at 480).  Moreover, even if this lone email could establish that Positronics and/or Omnivore were

transacting business in Ohio, Payr would fail to establish the *prima facie* case for personal

jurisdiction because it has not shown that its causes of action "arise from" this email.  R.C. §

2307.382(C); *Brunner*, 441 F.3d at 466.  This cold solicitation email did not proximately cause

10

(5:15cv1038)

Payr's trade secrets to be misappropriated, its contracts to be breached, or its copyright to be

infringed.  The most that can be said is the email is a symptom of Payr's injuries, not their cause.

Nonetheless, a separate portion of the Ohio long arm statute confers jurisdiction over

Defendants on some of Payr's claims.  Section 2307.382(A)(6) of the Ohio Revised Code

provides for personal jurisdiction when a defendant "[c]aus[es] tortious injury in this state to any

person by an act outside this state committed with the purpose of injuring persons, when he

might reasonably have expected that some person would be injured thereby in this state."  This

provision has been interpreted broadly, *see Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir.

2012), and district courts in Ohio have found the claims asserted by Payr fall within the ambit of

R.C. § 2307.382(A)(6).  *Safety Today, Inc. v. Roy*, 2012 WL 2374984 (S.D. Ohio June 22, 2012)

(misappropriation of trade secrets); *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 2011 WL

6293323 (S.D. Ohio Dec. 15, 2011) (copyright infringement).

Payr has alleged that all defendants have acted to misappropriate Payr's trade secrets.

ECF No. 1 ¶¶ 44–46.  Payr has also alleged that all defendants "willfully and intentionally copied

Payr's copyrighted code."  ECF No. 1 ¶ 67.  Payr, an Ohio company, was injured within the state.

In construing the facts in the light most favorable to Payr, as the Court must, *Serras v. First

Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989), Defendants are amenable to suit

under Ohio's long arm statute on Payr's claims arising from Defendants' tortious conduct.

### 2.  Due Process

As mentioned above, Payr must also demonstrate that the exercise of personal jurisdiction

over each defendant comports with "traditional notions of fair play and substantial justice."

11

(5:15cv1038)

*International Shoe Co.*, 326 U.S. at 316. Under Sixth Circuit law, Payr must show for each

defendant that (1) the defendant purposefully availed himself of acting in Ohio, (2) Payr's causes

of action arise from the defendant's activities in Ohio, and (3) the acts of each defendant have a

"substantial enough connection" with Ohio to make the exercise of jurisdiction reasonable.

*Mohasco Indus., Inc.*, 401 F.2d at 381.

Payr has failed to demonstrate which actions were taken by each specific defendant,

instead referring to the actions of "Defendants" collectively. "Personal jurisdiction must be

analyzed and established over each defendant independently." *Days Inns Worldwide, Inc. v.*

*Patel*, 445 F.3d 899, 904 (6th Cir. 2006). Payr has also not submitted any affidavits or

declarations for the Court to consider. As such, the Court may consider the uncontested facts

contained in the declarations submitted by Defendants in order to determine whether Payr can

demonstrate that the Court has personal jurisdiction over each defendant separately. *See Kerry*

*Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) (observing that the standard

for review for the *prima facie* case for personal jurisdiction "does not require a court to ignore

undisputed factual representations of the defendant which are consistent with the representations

of the plaintiff"); *T & W Forge, Inc. v. V & L Tool, Inc.*, 2005 WL 2739321, at *5 (N.D. Ohio

Oct. 24, 2005) (observing that, while all pleadings and affidavits are considered in the light most

favorable to the plaintiff, the uncontested assertions of the defendant may be considered).

### a. Purposeful Availment

Purposeful availment is "'the *sine qua non* for in personam jurisdiction.'" *CompuServe,*

*Inc.*, 89 F.3d at 1263 (quoting *Mohasco Indus., Inc.*, 401 F.2d at 381–82). "This purposeful

(5:15cv1038)

avaliment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (quotation marks and citations omitted). The mere existence of a contract does not demonstrate that a defendant has purposefully directed actions towards a state. *Calphalon Corp v. Rowlette*, 228 F.3d 718, 722–23 (6th Cir. 2000) (holding that a seventeen-month contractual relationship did not satisfy the purposeful availment requirement because the defendant's contacts with Ohio were solely because the plaintiff "chose to be headquartered in Ohio," not because the defendant intended to further business there specifically). Moreover, the mere allegation that plaintiff has been harmed in the forum state by defendant's out-of-state intentional tortious conduct, "does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). "Instead, minimum contacts can only be formed by 'an action of the *defendant* purposefully directed toward the forum State.'" *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994) (quoting *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987)) (emphasis added).

Chris Sullivan and Michael Wior are alleged to have discussed with Sibble the prospect of MenuPad investing in Payr and POSitronics, but that the discussions ultimately proved unsuccessful. ECF No. 1 ¶¶ 22, 29. As mentioned above, however, it was Payr who initiated the discussions with MenuPad, not the other way around. The discussions are not actions of Sullivan and Wior directed at Ohio, but rather actions of Payr/Sibble directed towards Florida (MenuPad's

13

(5:15cv1038)

principle place of business).  *Reynolds*, 23 F.3d at 1119.  Moreover, Payr does not contest

Sullivan and Wior's declarations, which state that all discussions that MenuPad had with Payr

occurred outside the state of Ohio.  ECF Nos. 20-5 ¶ 8; 21 ¶ 8.  These discussions are not

indicative of Sullivan or Wior attempting to form a continuous and systematic bond with Ohio; at

most, it suggests that Sullivan or Wior were interested in forming a possible bond with one

company that happened to be located in Ohio.  The connection to Ohio is, therefore, fortuitous.

*Calphalon Corp.*, 228 F.3d at 723 (holding that the defendant's interactions with the forum state

were solely due to the plaintiff's headquarters being located there, and not because of a desire to

"create 'continuous and systematic" consequences there"); *accord Euroglas*, 107 F.3d at 395

(holding that the communications between the parties did not establish personal jurisdiction, as

"it was purely fortuitous" that plaintiff happened to have an address in the forum state).  In sum,

Sullivan and Wior's discussions with Sibble do not establish purposeful availment when Payr

approached the two about investing, Sullivan and Wior did not have these discussions in Ohio,

and the only connection to Ohio is that Payr is an Ohio company.

Payr's sole allegation as to Victor Lafita is that he "has supported and/or ratified and/or

benefitted from the Menupad Defendants' misappropriation of Plaintiff's trade secrets for use by

Positronics and Omnivore."  ECF No. 1 ¶ 10.  Again, however, there is no discussion of whether

this occurred in Ohio or elsewhere.  Lafita also declares that all work that he has performed for

MenuPad, and all interactions with Payr, have occurred outside of Ohio.  ECF No. 20-4 ¶¶ 4–5.

Payr has not shown purposeful availment as to Lafita because it has not shown that Lafita has any

contacts with Ohio.

14

(5:15cv1038)

The apparent basis for asserting personal jurisdiction over MenuPad is predicated on the actions of its employees.  As discussed above, however, the investment negotiations do not establish purposeful availment.  Moreover, Defendants submitted declarations from Sullivan, Wior, and Lafita which all state that MenuPad does not have any property, offices, employees, bank accounts, post office boxes, telephone lines, or mailing addresses in Ohio, a license to conduct business in Ohio, and that it does not pay any taxes in Ohio.  ECF Nos. 20-4 ¶ 1; 20-5 ¶ 6; 21 ¶ 6.  Payr may not solely rely on its complaint's allegation that MenuPad regularly transacts business in the face of Defendants' properly supported motion to dismiss.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  Payr has failed to come forward with specific facts; the Court may, therefore, accept Defendants' declarations in concluding that Payr has not shown purposeful availment as to MenuPad.

Michael Taczak allegedly assisted Sibble with writing code for the POS Connectivity System.  ECF No. 1 ¶ 27.  While this conduct is an alleged breach of the Sibble Software Development Service Agreement, Taczak was not bound by its terms; Sibble was.  Moreover, Payr does not allege where this assistance occurred.  As Payr has not suggested an answer, the Court may credit the statements in Taczak's declaration that all interactions that he had with representatives of Payr occurred outside of Ohio.  ECF No. 20-3 ¶ 6.  The coding assistance, therefore, does not demonstrate purposeful availment as to Taczak.

Finally, Payr has failed to demonstrate purposeful availment as to Positronics and Omnivore.  As discussed above, the cold solicitation email is a single, isolated communication between Positronics/Omnivore and Payr, and is insufficient to establish that the companies

15

(5:15cv1038)

transact business in Ohio within the meaning of the state's long arm statute.  As a matter of Ohio

law, the "transacting any business" standard of R.C. § 2307.382 is co-extensive with the Due

Process Clause analysis.  *Burnshire Development, LLC*, 198 F. App'x. at 431–32.  Consequently,

Payr has not demonstrate purposeful availment for the same reasons that it has not shown that

Positronics and Omnivore transacted any business in Ohio.

### b.  Arising From

The second *Mohasco* factor requires that a cause of action arise from the defendant's

activities in the forum state.  *Mohasco Indus., Inc.*, 401 F.2d at 381.  This requirement is satisfied

when "the cause of action, of whatever type, ha[s] a substantial connection with the defendant's

in-state activities."  *Kerry Steel, Inc.*, 106 F.3d at 152 (quotation marks omitted).  This requires a

court to look at where the operative facts of the claim arose.  *Beydoun*, 768 F.3d at 507.  "'Only

when the operative facts of the controversy are not related to the defendant's contact with the

state can it be said that the cause of action does not arise from that contract.'"  *Calphalon Corp.*,

228 F.3d at 723–24 (quoting *Mohasco Indus., Inc.*, 401 F.2d at 384 n.29).

As discussed above, Lafita and Taczak have no contacts with Ohio to speak of.

Moreover, the limited contacts of the remaining Defendants cannot be said to have proximately

caused Payr's injuries.  *Beydoun*, 768 F.3d at 507–08 ("To the contrary, the plaintiff's cause of

action must be proximately caused by the defendant's contacts with the forum state.").  In this

case, it is the out of state conduct of Defendants residing in California and Florida that is alleged

to have proximately caused injury to Payr.

### c.  Reasonableness

16

(5:15cv1038)

   The third *Mohasco* factor requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco Indus., Inc.*, 401 F.2d at 381. The exercise of jurisdiction is presumed to be reasonable when the plaintiff satisfies the first two prongs of the *Mohasco* analysis. *CompuServe*, 89 F.3d at 1268.  "[W]hen considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

   In this case, no inference of reasonableness is warranted because Payr has failed to establish either of the first two *Mohasco* factors as to any of the defendants.  Moreover, Payr has not shown a substantial enough connection to make the exercise of jurisdiction reasonable. Defendants would be burdened by being forced to litigate in Ohio.  Although the Sixth Circuit recognizes that, in appropriate circumstances, jurisdiction may be proper over a defendant forced to travel to the forum state, courts have done so only when the plaintiff has otherwise established minimum contacts with the state.  *See Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003) (upholding the reasonableness of asserting jurisdiction over an out-of-state defendant whom the plaintiff had shown to purposefully avail itself of the forum state).  While Ohio has an interest in ensuring that its residents may obtain appropriate legal relief, this interest is diminished by the fact that the actionable conduct occurred outside of Ohio.  *Henderson*, 428 F.3d at 618 (noting

17

(5:15cv1038)

that, while the forum state has an interest in "protecting its residents' legal options," the fact that

the alleged deceptive actions occurred outside the state weighed against exercising jurisdiction).

Payr has an interest in obtaining relief.  But, it may obtain that relief in other fora (*e.g.*, California

and Florida) that have an equally strong interest in seeing the case resolved, given that

Defendants reside in those states where the actionable conduct is alleged to have occurred.

### 3. Summary

Payr has failed to establish a *prima facie* case for personal jurisdiction as to Defendants

Positronics, Omnivore, MenuPad, Michael Wior, Michael Taczak, Chris Sullivan, and Victor

Lafita.  Even in reviewing the affidavits and pleadings in the light most favorable to Payr, these

defendants do not have a substantial enough of a connection with Ohio that the exercise of

jurisdiction would comport with "traditional notions of fair play and substantial justice."

*International Shoe Co.*, 326 U.S. at  316.  Accordingly, the Court dismisses without prejudice

Defendants Positronics, Omnivore, MenuPad, Wior, Taczak, Sullivan, and Lafita.  *Henderson*,

428 F.3d at 620–21 (discussing that dismissal for want of personal jurisdiction is without

prejudice because it does not operate as an adjudication on the merits of the case).

### B. Sufficiency of the Complaint

Defendants have also moved to dismiss Payr's claims for misappropriation of trade

secrets, copyright infringement, accounting, and indemnification.  ECF No. 20-1 at PageID#

153–61.  Payr opposes this motion as to each count sought dismissed by Defendants.  For the

reasons that follow, the Court denies Defendants' motion as to Payr's claims for

misappropriation of trade secrets, copyright infringement, and indemnification, and grants as to

(5:15cv1038)

Payr's claim for accounting.

### 1. Misappropriation of Trade Secrets

Defendants have moved to dismiss Payr's Misappropriation of Trade Secrets claim for failing to specify what trade secrets were allegedly misappropriated. Defendants argue that the complaint has failed to define the trade secrets with any particularity—aside from the code written by Sibble and Payr's business proposal—and seeks either dismissal of the claim or for a more definite statement.

To prevail on a misappropriation of trade secrets claim under Ohio's Uniform Trade Secrets Act, Payr must demonstrate (1) the existence of a trade secret, (2) the acquisition of a trade secret as a result of a confidential relationship, and (3) the unauthorized use of a trade secret. *Heartland Home Fin., Inc. v. Allied Home Mortgage Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008). Ohio defines trade secrets as:

> Information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. § 1333.61(D). "Whether information qualifies as a trade secret is ordinarily 'a question of fact to be determined by the trier of fact upon the greater weight of the evidence.'" *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent And Awning Co.*, 233 F. Supp. 2d 934, 948 (S.D. Ohio 2002) (quoting *Fred Siegel Co. L.P.A. v. Arter & Hadden*, 707 N.E.2d 853 (1999) (syllabus)).

19

(5:15cv1038)

Payr has adequately pleaded the existence of trade secrets. Payr states a claim for misappropriation of trade secrets based on its Confidential Information, Technology, Business Plan for Payr and Positronics, and other technological and proprietary business information. ECF No. 1 ¶ 40. Its Confidential Information consists of "the Payr App, the POS Connectivity System, PAYR's business plans, marketing plans and strategy, and [other] know-how" that has not been disclosed to the general public or to Pay's competitors. ECF No. 1 ¶ 15. Its Technology consists of the Payr App—"a mobile payment software application for use in the restaurant and hospitality industry"—and the POS Connectivity System—"a related, cloud-based communication and integration software system designed to connect consumer clients' computer systems to the systems used by those at the point of sale." ECF No. 1 ¶ 14. Payr's Business Plan refers to an agreement between Payr and Sibble to divide its technology between Payr and POSitronics that was memorialized in a confidential document. ECF No. 1 ¶¶ 20–21. This adequately describes the trade secrets at issue. *Exal Corp. v. Roeslein & Associates, Inc.*, 2013 WL 6843022, at *3–5 (N.D. Ohio Dec. 27, 2013) (finding that plaintiff had adequately pleaded the existence of its trade secrets, but granting summary judgment to defendant on a misappropriation of trade secrets claim because the complaint's allegations respecting actual use "amount[ed] to naked assertions devoid of further factual enhancement." (internal quotation marks omitted)). Payr has, therefore, satisfied the notice pleading requirements of Fed. R. Civ. P. 8 as to the identity of Payr trade secrets that it alleges that Defendants have misappropriated for their own business, and Defendants are not entitled to a more definite statement.

Payr has pleaded a case of misappropriation of trade secrets. As discussed above, it has

20

(5:15cv1038)

alleged that its Confidential Information, Technology, Business Plan for Payr and Positronics are trade secrets under Ohio law.  Payr has also alleged that Sibble acquired Payr's trade secrets as a result of a confidential relationship, and has used them without Payr's authorization.  ECF No. 1 ¶¶ 42–44.  The Court, therefore, denies Defendants' motion to dismiss and motion for a more definite statement as to Payr's claim for misappropriation of trade secrets.

### 2. Copyright Infringement

Defendants has moved to dismiss Payr's copyright infringement claim on the grounds that Payr has not demonstrated ownership of the copyright in Sibble's coding.  Defendants also argue that Payr has not adequately demonstrated substantial similarity between the parties' coding.

To demonstrate copyright infringement, Payr must show that it owns the copyright creation and that Defendants copied it.  *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010).  Copying can be demonstrated through direct or indirect evidence.  "When there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue."  *Id.* (citations and internal quotation marks omitted).  Typically, copyright ownership initially vests in the work's author—in this case, Sibble.  17 U.S.C. § 201(a).  Payr, however, alleges that it can demonstrate ownership of the copyright as either a work made for hire or through a valid transfer.  ECF No. 1 ¶ 67.

The copyrights of a work made for hire vest with the employer or other person for whom the work was prepared.  17 U.S.C § 201(b).  The Copyright Act defines a work made for hire as:

(1) a work prepared by an employee within the scope of his or her employment; or

21

(5:15cv1038)

> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.  These two categories of works made for hire are "mutually exclusive, one for employees and one for independent contractors . . . ."  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 743 (1989).  In this case, Sibble's coding does not fit either definition of a work made for hire.  Payr does not allege that Sibble was a Payr employee.  To the contrary, the Software Development Service Agreement contemplated that Sibble could become a full time employee of Payr's at some later time (ECF No. 1-1 at PageID# 33), but until that time Payr acknowledged that Sibble was free to pursue other business opportunities.  ECF No. 1-1 at PageID# 22.  Moreover, the coding created by Sibble does not constitute "a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas."  17 U.S.C. § 101(2).

Under the Copyright Act, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  "So long as the parties' intent is clear, a transfer of copyright need not include any particular language."  *Gilleland v. Schanals*, 55 F. App'x 257, 260 (6th Cir. 2003); *see also Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("No magic words must be included in a document to satisfy [17 U.S.C. § 204(a)].").  "'Section 204(a)'s requirement is not unduly burdensome. . . . If the copyright holder

22

(5:15cv1038)

agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so.  It doesn't have to be the Magna Carta; a one-line pro forma statement will do.'" *Gilleland*, 55 F. App'x at 260 (quoting *Radio Television Espanola S.A.*, 183 F.3d at 927).

The Software Development Service Agreement constitutes a valid transfer of Sibble's copyright to Payr.  Section 6.1 of the SDSA includes "copyrightable material" in its definition of "Inventions"—a term not limited to the term's meaning under United States patent law.  ECF No. 1-1 at PageID# 26.  The SDSA then declares in section 6.2 that "any and all Inventions, as defined herein, developed in the course of performing under this Agreement shall be the sole property of [Payr]." *Id.*  Finally, section 6.4 states that:

> To the extent that such writings and works are not works for hire, [Sibble] hereby waives any and all 'moral rights' in such writings and works and agree[s] to assign to [Payr] all of its rights, title, and interest, including copyright, in such writings and works.

ECF No. 31 at PageID# 423.  Defendants argue that the phrase "agree to assign" does not constitute an immediate transfer of copyrights.  ECF No. 20-1 at PageID# 158.  That reading, however, is in tension with the import of sections 6.1 and 6.2 that "any and all [copyrightable material] developed in the course of performing under this Agreement shall be the sole property of [Payr]." ECF No. 1-1 at PageID# 26.  The meaning of "agree to assign" is ambiguous as it is used, and may be subject to clarification through extrinsic evidence.  *Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 65 (6th Cir. 2009) (noting that parol evidence is admissible to clarify ambiguous language).  At this stage of litigation, Payr has plausibly alleged a valid transfer of copyright ownership.

(5:15cv1038)

Payr has also plausibly alleged copying through indirect evidence. *R.C. Olmstead, Inc.,* 606 F.3d at 274 (holding an inference of copying arises from showing access to the allegedly infringed work and substantial similarity between the two works). Sibble, as the person responsible for writing the code under the SDSA, certainly had access to the code. *E.g.*, ECF No. 1 ¶ 27. Payr alleges that Defendants' allegedly infringing code is substantially similar to the original code written under the SDSA. ECF No. 1 ¶ 68. Payr has, therefore, pleaded the elements of a copyright infringement claim. Defendants' motion is denied as to Payr's claim for copyright infringement.

### 3. Accounting

Defendants move to dismiss Payr's accounting claim by arguing that Payr has not demonstrated an adequate reason for the Court to impose such an extraordinary remedy. Payr contends that the accounting claim is proper.

"An action for an accounting seeks a determination by a court of what may be due the respective parties as a result of the relationship between them." *Moore v. Sweda*, 499 N.E.2d 371, 373 (Ohio Ct. App. 1985). To state a claim for accounting in Ohio, the plaintiff must set forth appropriate legal bases and facts:

> Such legal bases and operative facts could have been pled in the form of "fraud, fiduciary or trust relationship, and necessity." *Miller Med. Sales v. Worstell*, No. 91 AP-610, 1992 Ohio App. LEXIS 779, at *18 (Ohio Ct. App. Feb. 18, 1992). Or, Defendants could have pled that "mutual accounts" or "circumstances of great complication" existed between the parties. *Chapman v. Lee*, 45 Ohio St. 356, 13 N.E. 736, 740 (Ohio 1887). Alternatively, the Defendants could have argued that the Plaintiffs had "possession of profits to which another person is entitled to share, regardless of what [their] relationship may have been at the time the profits were earned." *Baccelieri v. Heath*, 158 Ohio St. 481, 110 N.E.2d 130, 134 (Ohio 1953).

24

(5:15cv1038)

*Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 2007 WL 1144866, at *4 (S.D. Ohio Apr. 16, 2007). The remedy of accounting, however, is unavailable when an adequate remedy exists at law. *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972) (referring to accounting as an "extraordinary remedy"). "In light of the broad discovery available to litigants, accounting actions are of dubious utility." *Digital 2000, Inc. v. Bear Commc'ns, Inc.*, 130 F. App'x 12, 23 (6th Cir. 2005).

Payr's claim fails because it has not demonstrated an adequate legal basis. Payr's sole allegation in support of the necessity of the accounting is that, "[b]ecause of the convoluted nature of Defendants' finances and 'shell-game' of creating new entities and transferring assets, [it] cannot know the extent of its injuries without an accounting of Defendants' earnings and income." ECF No. 1 ¶ 72. Even if this were sufficient to plead necessity, Payr has failed to allege that Defendants engaged in any fraudulent conduct. Moreover, the allegations that Defendants have shared assets between two distinct legal entities does not constitute a "circumstance[] of great complication." Payr can obtain the information it desires through discovery. Accordingly, the Court grants Defendants' motion as to Payr's claim for accounting.

### 4. Indemnification

Defendants move to dismiss Payr's indemnification claim. They argue that the indemnification clause does not cover damages incurred by parties to the contract. Defendants argue that Payr "is under no present threat for which it could possibly seek indemnification from Sibble," and other relief is available to Payr in the event that Sibble is found to have breached the SDSA. Payr argues that it may maintain its indemnification claim because the indemnity clause

25

(5:15cv1038)

is broadly written and not limited to damages suffered by third parties.

Defendants are incorrect that the term "indemnification" necessarily implies the existence of a third party. In *Battelle Memorial Institute v. Nowsco Pipeline Services*, 56 F. Supp 2d. 944, 950 (S.D. Ohio 1999), the court recognized that "indemnify" typically means "reimburse," not "reimburse for losses incurred by third parties." The district court found support for this reading in the Sixth Edition of Black's Law Dictionary, which defined "indemnify" as:

> To restore the victim of a loss, in whole or in part, by payment, repair, or replacement. To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him. To make good; to compensate; to make reimbursement to one of a loss already incurred by him.

*Battelle*, 56 F. Supp 2d. at 950 (quoting Black's Law Dictionary 529 (6th ed. 1991). The most recent edition of Black's Law Dictionary expressly defines "indemnify" as "to reimburse (another) for a loss suffered because of a third party's *or one's own* act or default." Black's Law Dictionary 886 (10th ed. 2014) (emphasis added). The district court in *Battelle* also observed that both the Sixth Circuit and Ohio Supreme Court have recognized that indemnification can mean reimbursement without limitation to situations in which the damage is caused by third parties. *See In re Air Crash Disaster v. Northwest Airlines, Inc.*, 86 F.3d 498, 548 (6th Cir. 1996) ("Indemnity serves to shift the burden of loss between parties when equity so requires. Indemnity shifts the entire loss from the party who has been forced to pay to the party who should properly bear the burden."); *Travelers Indemnity Co. v. Trowbridge*, 321 N.E.2d 787 (Ohio 1975) (syllabus) ("Indemnity . . . arises from contract, express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete

26

(5:15cv1038)

reimbursement."), *rev'd on other grounds*, *Motorists Mutual Insurance Co., et al. v. Huron Road*

*Hospital, et al.*, 653 N.E.2d 235 (Ohio 1995).  Absent an express limitation to third-party

damage, courts in Ohio and the Sixth Circuit will read indemnification clauses to apply to

damages caused by a party to the contract.  *Battelle*, 56 F. Supp 2d. at 950.

     In this case, the parties did not agree to any such express limitation on the SDSA's

indemnification clause.  Section 8.1 provides that:

> The Parties agree to and shall indemnify, defend, and hold harmless each other . . .
> from and against any and all losses, claims, demands, suits, actions, proceedings
> and expenses (including reasonable attorney fees), including without limitation all
> acts of negligence, infringement and malfeasance, directly or indirectly arising out
> of or resulting from (a) any act or omission of a party related to performance
> under this Agreement; (b) any unauthorized use by a party of the Confidential
> Information of another; (c) any breach of any representation, warranty, or
> covenant of a party contained in this Agreement; or (d) any failure of a party to
> perform or adequately perform any of the representations, warranties and
> agreements in this Agreement.

ECF No. 1-1 at PageID# 27.  The clause does not include language limiting indemnification to

circumstances in which either side injures a non-party.  Accordingly, Payr may maintain its claim

for indemnification against Defendants.

     Alternatively, Defendants argue that the indemnification claim fails because other more

specific provisions of the SDSA should control the disputes in this case.  ECF No. 37 at PageID#

507.  Defendants argue that Section 4 governs the parties' use of confidential information and

Section 6 governs assignment obligations, and that both those sections are more specific than the

general indemnification clause as to how Payr may obtain relief.  *Id.* at PageID# 508.  It is true

that, as Defendants observe, "[u]nder Ohio law, a specific provision controls over a general one."

*Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 903 (6th Cir. 2006).  The argument falls

27

(5:15cv1038)

short, however, because neither Sections 4 nor 6 specify what recourse, if any, the parties have in the event that they suffer damages.  The indemnification clause does.  "A fundamental principle of contract construction requires that the document be read as a whole in order to identify the intent of the parties."  *Monsler v. Cincinnati Cas. Co.*, 598 N.E.2d 1203, 1209 (Ohio Ct. App. 1991).  When the SDSA is read as a whole, Sections 4 and 6 co-exist with the indemnification clause: the former govern certain obligations of the parties, while the latter provides the parties with recourse in the event that those obligations are ignored.  Accordingly, Defendants' motion to dismiss is denied as to Payr's indemnification claim.

### IV.  Conclusion

For the reasons explained above, the Court grants Defendants' motion to dismiss for lack of personal jurisdiction.  Payr's claims against Defendants Positronics, Omnivore, MenuPad, Wior, Taczak, Sullivan, and Lafita are dismissed without prejudice.  The Court denies Defendants' motion to dismiss for failure to state a claim as to Payr's claims for misappropriation of trade secrets, copyright infringement, and indemnification, and grants the motion as to Payr's claim for accounting.  The Court also denies Defendants' motion for a more definite statement on Payr's misappropriation of trade secrets claim.

IT IS SO ORDERED.


 December 31, 2015                                       */s/ Benita Y. Pearson*
Date                                                                  Benita Y. Pearson
                                                                          United States District Judge


C:\Users\romitos\AppData\Local\Temp\notes2EAA2D\15-1038 Pay(q)r LLC v Sibble et al MTD MOO.wpd