PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAY(Q)R, LLC, ) | |
| ) | CASE NO. 5:15cv1038 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| GEORGE SIBBLE, *et al.*, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendant. ) | **ORDER** [Resolving ECF No. 6] |

Pending before the Court is a Motion for Preliminary Mandatory Injunction filed by Plaintiff Pay(q)r, LLC ("Payr"). ECF No. 6. The Court has been advised, having reviewed the record, including the parties' briefs and the applicable law. For the reasons that follow, the Court denies Plaintiff's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are discussed more fully in the Court's December 31, 2015 Memorandum of Opinion and Order (ECF No. 52 at PageID # 581–84), but are briefly summarized here.

Plaintiff approached Defendant George Sibble about working on developing code for Plaintiff's idea for a POS Connectivity System. Plaintiff agreed to pay Sibble for 300 hours of coding work, and also promised the possibility that Sibble could acquire an ownership interest in another company that Plaintiff's members wanted to form. The relationship between Plaintiff and Sibble began to deteriorate, culminating in Sibble informing Plaintiff that he no longer

(5:15cv1038)

wished to work for the company and that wanted to pursue other opportunities. Less than a year later, Plaintiff received a cold solicitation email from an entity that was similar to the name of the company Plaintiff wanted to form with Sibble. The email pitched a product and service that Plaintiff believes is virtually identical to its idea for a POS Connectivity System.

Plaintiff first filed lawsuit on November 24, 2014. *See Pay(q)r, LLC v. Positronics Technologies, Inc. et al.* (14-2588). Plaintiff voluntarily dismissed that case on May 18, 2015, and filed the instant action on May 22, 2015. Plaintiff filed a motion for preliminary mandatory injunctive relief shortly thereafter. ECF No. 6. Defendants oppose the motion (ECF No. 22); Plaintiff has replied. ECF No. 26. The matter is ripe for adjudication.

## II. LEGAL STANDARD

In determining whether a preliminary injunction is appropriate, a court must consider: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury without the injunction, (3) whether issuance of the injunction would cause substantial harm to others, and (4) whether the public interest would be served by issuance of the injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). These factors are not prerequisites to be met, but must be balanced against each other. *Id.* "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

The Sixth Circuit does not require a heightened evidentiary burden when the moving party seeks a mandatory injunction, one that alters the status quo by ordering the performance of an act, as opposed to a prohibitory injunction that maintains the status quo. *United Food &*

(5:15cv1038)

*Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (holding that the balance of equities standard for granting injunctive relief applies in cases seeking either mandatory or prohibitory injunctive relief).  At the same time, however, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion . . . because the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it."  *Leary*, 228 F.3d at 739 (internal quotation marks and citations omitted).

### III.  DISCUSSION

**A.  Strong Likelihood of Success on the Merits**

Plaintiff argues that it can demonstrate a strong likelihood of success on the merits of its breach of contract claim against Sibble for failing to assign the POS Connectivity System patent application.  ECF No. 6-1 at PageID # 56–57.  According to Plaintiff, the unambiguous language of the Software Development Service Agreement signed by Sibble on September 30, 2015 ("Coding SDSA") entitles Plaintiff to the assignment.  The Coding SDSA provides that "[t]he Parties acknowledge and agree that any and all Inventions, as defined herein, developed in the course of performing under this Agreement shall be the sole property of COMPANY," and that Sibble "shall, at any time during the term or after expiration or termination of this Agreement, at a COMPANY's request, execute specific assignments in favor of COMPANY of COMPANY's proprietary interest" in any Inventions covered by the agreement.  ECF No. 6-4 at PageID # 76.  "Inventions," as used by the Coding SDSA, covers a broad category of things ("procedures,

3

(5:15cv1038)

systems, machines, methods, processes, uses, apparati, compositions of matter, designs, configurations, computer programs, copyrightable material, notes, records, drawings, trade and service marks, trade dress and trade secrets of any kind"), and is defined without obvious regard to how the term is used as a matter of U.S. Patent law.  *Id.*  Plaintiff argues the POS Connectivity System fits within the Coding SDSA's definitions of Inventions, and as such, Sibble is required by the Coding SDSA to assign it upon request.

In opposition, Defendants argue that the POS Connectivity System does not fall within the definition of Invention under the Coding SDSA.  ECF No. 22 at PageID # 193–94.  According to Defendants, the Coding SDSA limits its "scope of work" or expectations of Sibble to "completing production environment based on the proposal dated September 25, 2013."  ECF No. 6-4 at PageID # 81.  Moreover, Defendants indicate that the Coding SDSA reserves for Sibble "[a]ny and all Confidential Information and Trade Secrets are, which [he] brings to the relationship defined by this Agreement, and at all times hereafter shall remain the sole property of said party."  *Id.* at PageID # 75.  It is Defendants' position that the Proposal dated September 25, 2013 (ECF No. 43-1) constitutes work that Sibble brought to the relationship with Plaintiff and, therefore, is reserved to him under the Coding SDSA.  This, Defendants intone, obviates any obligation to assign it to Plaintiff.

Plaintiff retorts that it, and not Sibble, owns the Proposal.  ECF No. 26 at PageID # 301–03.  Before preparing the Proposal, Sibble and Plaintiff signed a different Software Development Service Agreement that the parties refer to as "Proposal SDSA."  The Proposal SDSA provides that "any and all Inventions, as defined herein, developed in the course of

4

(5:15cv1038)

performing under this Agreement shall be the sole property of COMPANY," and Sibble "shall, at any time during the term or after expiration or termination of this Agreement, at a COMPANY'S request, execute specific assignments in favor of COMPANY of COMPANY's proprietary interest" in Inventions created thereunder. ECF No. 26-2 at PageID # 338. This language, Plaintiff argues, proves that Sibble's Proposal belongs to them, and that Sibble could not have brought the Proposal's idea to the Coding SDSA. In further support, Plaintiff points out that the Proposal SDSA provides that Sibble retained IP rights in work performed under the Proposal SDSA, if Plaintiff failed to execute a subsequent agreement—a condition which ceased to exist when Plaintiff executed the Coding SDSA.

    Plaintiff's claim is complicated by a section in the Proposal SDSA that permits the parties to retain ownership over certain information they bring to the agreement: "Any and all Confidential Information and Trade Secrets are, which a party brings to the relationship defined by this Agreement, and at all times hereafter shall remain the sole property of said party." ECF No. 26-2 at PageID # 337. To the extent that the ideas contained in the Proposal constitute "Confidential Information and Trade Secrets," Sibble would retain ownership under the Proposal SDSA.

    The term "Confidential Information" is broadly defined:

> any and all information, regardless of whether kept in a document, in an electronic storage medium, or in a party's memory, and includes but is not limited to all data, compilations, programs, devices, strategies, concepts, ideas, and methods concerning or related to . . . The know-how, ideas, inventions, manufacturing processes and techniques, regulatory approval strategies, computer programs, data, schematics, design work, formulas, compositions, service techniques and protocols, new and existing product designs and specifications, any modifications to such product designs and specifications, and any other skills or ideas

(5:15cv1038)

developed, accumulated, or acquired by a party.

ECF No. 26-2 at PageID # 336.  Culling what Sibble retains in the relationship from the equally broad definition of "Inventions" that belong to Plaintiff ("procedures, systems, machines, methods, processes, uses, apparatuses, compositions of matter, designs, configurations, computer programs, copyrightable material, notes, records, drawings, trade and service marks, trade dress and trade secrets of any kind") requires a fact-intensive inquiry.

The results of this fact-intensive inquiry—whether the contents of the Proposal are "know-how" that Sibble acquired prior to his relationship with Plaintiff or something he "designed" for Plaintiff—could preclude summary judgment, were the case in that phase of litigation.  Although Plaintiff has demonstrated there is a chance of success on the merits, this is far short of what Plaintiff needs to show to obtain preliminary injunctive relief.  Leary, 228 F.3d at 739 ("At the same time, however, the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." (internal citations and quotation marks omitted)).  Accordingly, this factor weighs against granting Plaintiff's motion.

### B. Whether Movant Will Suffer Irreparable Injury

The movant must demonstrate that irreparable injury is likely to occur in the absence of an injunction.  "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal citations omitted).  "[A]n unreasonable

6

(5:15cv1038)

delay in filing for injunctive relief will weigh against a finding of irreparable harm." *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 511F. App'x 398, 405 (6th Cir. 2013).

Plaintiff claims that it will suffer irreparable injury in myriad ways, including (1) being unable to compete without the patent rightfully asserting its "bundle of rights," (2) experiencing problems with soliciting customers without assurances of a patent, and (3) risking Sibble controlling the patent application process because he is listed as the inventor, and the infirmity of Payr's status as the assignee without a valid assignment.  ECF No. 6-1 at PageID # 57–60.  In support, Plaintiff relies on a case from the Southern District of Ohio, *Ethicon Endo-Surgery v. Crescendo Techs.*, No. 1:07-cv-1016, 2009 WL 2707805 (S.D. Ohio, Aug. 24, 2009), in which injunctive relief was awarded, in part, on the basis that the movant would suffer irreparable injury if its former employee was permitted to keep the misappropriated patent under his control while employed by the movant's competitor.  *Ethicon* is distinguishable, however, because the injunction was entered after trial when the court had been presented with far more evidence that irreparable injury was likely in the absence of an injunction.  *Winter*, 555 U.S. at 22.

Defendants argue that, as far as control over the patent is concerned, Plaintiff's designation as the listed assignee, coupled with the fact that Plaintiff's patent attorney filed the patent application, means that Plaintiff has much more control over the process than Plaintiff suggests.  Moreover, Defendants argue that the affidavits in support (ECF No. 6-3 ¶¶ 19–21) do not speak to any difficulties in soliciting clients aside from "unsubstantiated speculation."  ECF No. 22 at PageID # 191–92.  Defendants also argue that how long Plaintiff waited to file a

7

(5:15cv1038)

motion for preliminary mandatory injunction reveals that it does not face irreparable injury. Defendants argue that Plaintiff knew, as of January 7, 2014 (the date that Plaintiff filed the patent application), that Sibble had not executed a valid assignment in Plaintiff's favor.  Plaintiff filed the instant motion on June 16, 2015.  This delay, Defendants argue, reveals that Plaintiff itself did not believe it faced irreparable injury.  *Id.* at PageID # 190–91.  To this, Plaintiff argues that the delay in filing the motion is justified by Plaintiff's decision to conduct an investigation to see if the dispute could be resolved short of litigation.[1]  ECF No. 26 at PageID # 304–05.

Even if Plaintiff preferred to resolve the dispute without litigation, it, nevertheless, filed two lawsuits within six and a half months before filing a motion for preliminary injunction.  This delay in seeking injunctive relief discourages a finding that Plaintiff's injury will be irreparable. *See Ohio Contractors Ass'n v. City of Akron*, No. 5:14CV0923, 2014 WL 1761611, at *8 (N.D. Ohio May 1, 2014) (finding a two-month delay in filing for injunctive relief contributed to the finding of no irreparable injury).

### C. Whether Issuance of Injunction Will Cause Substantial Harm to Others

Plaintiff argues that the only harm suffered by others would be the self-inflicted harm suffered by Sibble for falsely holding himself out as the owner of the patent rights at issue.  ECF No. 6-1 at PageID # 61.  Plaintiff contrasts this with the harm that it would suffer through the loss of customers.  *Id.*  Defendants disagree, and argue that, because the motion is a preliminary mandatory injunction, they will be substantially harmed by a preliminary alteration of the status

---

[1] This reply does not explain why Plaintiff initially brought suit in November 24, 2014 (*see Pay(q)r, LLC v. Positronics Technologies, Inc. et al.* 14-2588), and voluntarily dismissed that lawsuit without moving for a preliminary mandatory injunction.

8

(5:15cv1038)

quo. ECF No. 22 at PageID # 192–93.

Whether injunctive relief will cause substantial harm is necessarily intertwined with Plaintiff's likelihood of success on the merits. Characterizing Defendants' harm as self-inflicted (and, by Plaintiff's argument, not substantial) necessarily presupposes that Plaintiff will prevail on the merits. Conversely, Defendants' argument that they will be harmed by the alteration of the status quo will be substantial if it is determined that Plaintiff's case is without merit. At this phase of litigation, either outcome is a possibility, as neither can be ruled out without additional information in the record. Accordingly, this factor neither weighs in favor of or against granting the motion.

### D. Whether Public Interest Would Be Served By Injunction

Plaintiff argues that the public interest in enforcing contracts is served by the issuance of an injunction. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). Plaintiff also argues that the public interest is served by preventing false or misleading advertising. *See Coca-Cola Co. v. Procter & Gamble Co.*, 822 F.2d 28, 30–31 (6th Cir. 1987) (discussing legal protections for claims of misrepresentation under federal and state law).

Defendants agree with Plaintiff's arguments in principle, but contest that they balance in Plaintiff's favor. Defendants agree that enforcing contractual rights and obligations is something that the public has an interest in, but that it does not have an interest in enforcing rights and obligations that do not exist. ECF No. 22 at PageID # 194–95. Any assignment, according to Defendants, would violate Sibble's contractual rights. Relatedly, Defendants assert that there is

9

(5:15cv1038)

no false advertising because Sibble is the owner of the software.

Defendants also argue that the public's interest in increased competition is harmed in this case because the assignment would decrease competition. *See Ohio Contractors Ass'n v. City of Akron*, No. 5:14CV0923, 2014 WL 1761611, at *8 (N.D. Ohio May 1, 2014). Defendants also argue that the public interest does not support injunctive relief because of Plaintiff's delay. *See Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 823 (E.D. Mich. 2013) ("The public interest does not require a court to assist a supplicant for equity who has not acted diligently.").

This factor is also closely intertwined with the likelihood of success on the merits. The compelled assignment furthers the public's interest in enforcing contracts when the contract requires the assignment to be made. By contrast, the public's interest in enforcing contracts is harmed by a wrongful assignment. Similarly, the public's interest in fair competition is harmed when the compelled assignment forces the true owner to relinquish the patent application. Fair competition is promoted, however, when the true owner retains the patent application as a result of the compelled assignment. Moreover, the public interest in protection from false advertising is only furthered when false advertising is going on. It is not furthered when the true owner is advertising truthfully. At this stage of litigation, it cannot be conclusively determined whether Plaintiff will prevail on the merits. As such, it is unclear whether granting injunctive relief would serve or hinder the public interest. This factor, therefore, neither weighs in favor or against granting Plaintiff's motion.

(5:15cv1038)

### E.  Balancing of Factors

In balancing the four factors applicable to motions for preliminary injunctions, the Court holds that injunctive relief is not appropriate, based on the record before it.  Plaintiff has not demonstrated a likelihood of success rising to the level required under *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).  Additionally, Plaintiff's delay for at least six and a half months between first bringing lawsuit against Defendants and filing the motion under consideration weighs against the irreparable nature of any injury Plaintiff may suffer.  The potential for harm to others and the public interest do not tip the scales in favor of or against granting Plaintiff's motion.

## IV.  Conclusion

For the reasons explained above, the Court denies Plaintiff's motion for preliminary mandatory injunctive relief.

IT IS SO ORDERED.

| | |
|---|---|
| February 19, 2016 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |